J. JONES, Justice,
specially concurring.
I concur in the Court’s opinion because, although Washington Trust did some troubling things during its tenure as trustee, William and Erie Bowman do not have standing to seek redress for those actions. The trust beneficiary who might be in a position to complain of the questionable actions, Ryan Bowman, is not a party to this proceeding. The matters of concern relate to advances Washington Trust made to Ryan in the amount of $147,559.24 prior to 2007.[5]
The advances to Ryan significantly exceeded the income from his trust. In January of 2007, Washington Trust notified all the beneficiaries that it intended to sell certain real property to obtain funds for their support. That precipitated these proceedings by Teresa Blankenship to stop any property sales and to remove Washington Trust as trustee. In their brief, Eric and William alleged:
A reasonable inference from the evidence presented is that Washington Trust Bank significantly exceeded reasonable and prudent actions by continuing to advance monies to Ryan Bowman way beyond his portion of the income being generated by the assets and after being requested by the other beneficiaries to stop advancing monies in excess of normal distribution. It is also reasonable to infer that Washington Trust Bank made the decision to sell the commercial property in order to repay the amounts that they improperly advanced. At the time the decision to sell property was made, they were no longer acting solely in the best interest of the beneficiaries as required by I.C. § 68-505 and § 68-506, but were acting in the best interest of Washington Trust Bank in order to repay the monies owed by Ryan. This lawsuit was then initiated to enjoin Washington Trust Bank from selling property. Four (4) months after the litigation was commenced Washington Trust Bank breaches its fiduciary obligations to the beneficiaries and not only executed a formal promissory note but encumbers the commercial properties of the Althea Lorraine Bowman Testamentary Trust with a deed of trust issued in favor of Washington Trust Bank’s Private Banking Division.
The record does lend support to the concerns raised by Eric and William.
The first matter of concern relates to the large amount that was advanced to Ryan. When counsel for Washington Trust was asked at oral argument of this case why Ryan was given advances substantially exceeding the income of his trust, the response was that Ryan was very demanding.[6] However, one of the reasons for choosing an institutional trustee, such as a bank, is to have a disinterested party that can resist the efforts of demanding beneficiaries to get their hands on money in circumstances not in keeping with the spirit of the trust instrument.
The record does not disclose what Ryan was told at the time the advances were being made — whether the distributions constituted an invasion of principal or whether they were a loan that he would have to pay back. It would certainly have been appropriate to advise him that the advances he demanded would end upon a promissory note bearing 8.25% interest that would affect his future distributions. What does appear from the record is that the $147,559.24 was advanced *298 prior to 2007, but that the promissory note was not executed by Washington Trust until August 6, 2007. This lends itself to the appearance that Washington Trust may have advanced more funds to Ryan than was prudent based on the financial condition of his trust and that, after Teresa filed her petition in April of 2007, Washington Trust decided to characterize the advances as a loan.
A further item of concern has to do with the loan transaction. Washington Trust obtained the loan from its own private banking division, giving rise to the appearance of a conflict of interest. When asked at oral argument why the loan was obtained essentially in-house, counsel responded that this was done because Washington Trust offered the best deal (the 8.25% interest rate). That may be, but there is no indication in the record that Washington Trust complied with I.C. § 68-108(b) which requires court authorization where the duty of the trustee and its individual interest conflict in the exercise of a trust power. This provision states that “personal profit or advantage to an affiliated or subsidiary company or association is personal profit to any corporate trustee.” Id.
Also of concern, but not particularly from Ryan’s standpoint, is the wording of the deed of trust. Although the document indicates that the loan is being contracted by the trustee of the trust for Ryan, as to a one-fourth interest in the trust established by his mother, the trust deed makes no such distinction with regard to the real property being encumbered. That is, it does not appear that the trust deed limits its encumbering effect to just Ryan’s proportionate interest in the real property. However, this issue was not raised by Eric and William in their appeal and is not before the Court for decision.
While these matters are not presented for determination on appeal, they certainly deserve passing mention.

. The trust document does provide for the trustee to pay to each beneficiary the current net income from the beneficiary’s share of the trust, as well as the power to invade the principal of the beneficiary’s trust share, as deemed reasonable by the trustee to pay expenses of support, health, maintenance and education. In addition, the trustee was authorized to loan trust funds to the beneficiary from his share of the trust to assist in meeting any financial emergency.

. Washington Trust's counsel did a good job of arguing its case before the Court and responding to questions. Counsel does not bear any responsibility for questionable actions that may have been taken by the bank, as trustee.